**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| PHARMANET, INC. et. al.,  : | | |
| | : | Civ. No. 08-2965 (GEB) |
| Plaintiffs, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| DATASCI LIMITED LIABILITY | : | |
| COMPANY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of DataSci Limited Liability Company ("Defendant" or "DataSci") to dismiss the complaint for declaratory judgment filed by Pharmanet, Inc. and Pharmanet, LLC (collectively, "Plaintiffs" or "PharmaNet") or, in the alternative, to transfer the case to the United States District Court for the District of Maryland (Docket No. 6).  For the reasons discussed below, Defendant's motion is denied.

**I.      BACKGROUND**

Defendant is a Maryland limited liability company with its principal place of business located in Maryland. (Compl., ¶ 3).  Defendant is the owner of U.S. Patent Nos. 6,496,827 ("the '827 Patent"), which claims a method and apparatus for collecting and validating clinical trial data from geographically distributed sites. ('827 Patent, attached as Exh. A to Compl. (Docket No. 1)).  Plaintiffs, Delaware businesses with their principal places of business located in New Jersey, are  "leading provider[s] of clinical research services, including electronic data capture [EDC] services, to companies that conduct clinical trials of drugs."  (Compl., ¶¶  2, 3 8).

In their Complaint, Plaintiffs allege that "DataSci does not sell any products, does not have any dedicated employees, does not have a website, and DataSci's only business is to use the ['827 Patent] to try and force electronic data capture companies to pay it money."  (Compl., ¶

1

11). Plaintiffs further allege that Defendant "comprises sophisticated patent lawyers" in that its principals include a patent lawyer and the spouse of a second patent lawyer who have represented Defendant in past infringement lawsuits and who are currently partners of the firm acting as Defendant's counsel in the instant matter.  (Pls.'  at 2-3 (citing Deposition Testimony and Attorney Biographies of Mark R. Shanks, Esq. and Toni-Junell Herbert, Esq., and Shanks & Herbert Invoice for completion of '827 Patent application, dated May 15, 1997, attached as Exh. H to Certif. of Robert W. Ashbrook, Jr. ("Ashbrook Certif.") (Docket No. 9))).

From 2004 to 2006, Defendant has filed five lawsuits against EDC vendors for infringement of the '827 Patent, including the entities Phase Forward, Inc., DataLabs, Inc., eTrials Worldwide, Inc., and DataTrak International, Inc. (Compl. ¶¶ 12-16).  In 2008, Defendant also filed another two infringement lawsuits concerning the '827 Patent, which are currently pending in the United State Court for the District of Maryland.  (Def.'s Mot. at 2 n. 1 (citing *DataSci, LLC v. Covance, Inc.*, No. 08-1583 (D. Md. 2008); *DataSci, Inc. v. Quintiles Transnat'l Corp. et al*, No. 08-1679 (D. Md. 2008) (Docket No. 6)).

It appears Defendant and its actions in defense of the '827 Patent have received a significant amount of attention in the EDC community over the past few years.  Plaintiffs have submitted six news articles dated from October 2006 through August 2008.  (Attached as Exhs. B-G  to Ashbrook Certif.) (Docket No. 9-3)).  These articles, which have such titles as "Datasci [sic] Suits Threaten Industry" and "Vampires 3, Society 0: DSG Settles Datasci [sic] Lawsuit," characterize Defendant as "a Maryland shell company that has been the beneficiary of an apparent blunder by the U.S. Patent and Trademark Office (USPTO)," and state that the USPTO's award of the '827 Patent to Defendant has "allowed Datasci [sic] to claim that it invented using the internet for clinical trials" when "several firms had already been doing just that" and so "permitted Datasci [sic] to pursue technology companies that had been servicing the industry for years, but without patents." (*See* "Vampires 3, Society 0: DSG Settles Datasci [sic] Lawsuit," Mar. 13, 2007, attached as Exh.. C to Ashbrook Certif; "Four Cases Done, One Left:

2

DataTrak Wins EDC Patent Case," Aug. 2, 2007, at 2, attached as Exh. D to Ashbrook Certif.)
The articles also chronicle the various lawsuits that Defendant has brought against certain EDC
firms and the settlements which have been the result of most of these suits.  (*See e.g. id.*, "etrials
Becomes Sixth EDC Company to Settle Datasci [sic] Patent Dispute," Nov. 28, 2007, attached as
Exh. E to Ashbrook Certif.)

The articles also discuss the impact of Defendant's actions on other EDC firms, with one
article stating that "EDC vendors are responding to the actual - or feared - legal pressure being
exerted by Datasci, [sic] a strategy the company gives no hint of abandoning."  ("eTrials Joins
Ranks of Datasci [sic] EDC Licensees," Jan. 22, 2008, attached as Exh. F to Ashbrook Certif.
("Kozam Article").  This article also quotes Marc L. Kozam, M.D. ("Kozam"), a co-founder of
DataSci and a co-inventor of the '827 Patent, as stating that "[s]everal new patent infringement
lawsuits are 'on the horizon'" and that "Datasci [sic] is looking for companies who 'want' to
license its technology but will use legal channels if necessary." *Id.*, Decl. of Marc L. Kozam,
M.D.  ("Kozam Decl.") (Docket No. 6-4).  The article further quotes Kozam:

> In some cases, identifying companies violating Datasci's [sic] patent has
> been a matter of "drawing inferences and contacting companies to
> discuss their [data collection] methods," said Kozam. There "may be
> several" EDC companies that don't infringe on the patent. "But, if so,
> their ways are not the best way to conduct clinical trials."

(Kozam Article).

On May 30, 2008, Defendant's attorney sent a one-page letter to Jeffrey P. McMullen,
President and CEO of Pharmanet Development Group ("PDG").  (Letter, May 30, 2008, attached
as Exh. A to Ashbrook Certif. ("Letter")).  The Letter indicated that the attorney "has been
retained as intellectual property counsel by DataSci, LLC . . . to approach companies that may
have a business interest in licensing DataSci's patent portfolio."  *Id.*  The Letter further stated
that Defendant was the owner of the '827 Patent, that it also "owns issued patents on this
technology in other countries" and enclosed a copy of the '827 Patent and its file history on CD.
*Id.*  The Letter also indicated that "[t]o date, DataSci's licensees include Phase Forward

Incorporated, MediData Solutions Worldwide, Datalabs, Inc., etrials Worldwide and DataTrak International," which are the companies against which Defendant had previously filed suit, and also noted that "DataSci is also in active discussions with other companies." *Id.*; Compl. ,¶¶ 12-16.  The Letter closes by stating "[p]lease let us know if you are interested in discussing a license to DataSci's patented technology. If your company does not have an interest, we would like to receive a response as soon as possible, but no later than **June 20, 2008**." (Letter (emphasis in original)).  Defendant asserts that its counsel sent similar letters to approximately 72 other companies around that time.  (Def.'s Mot. at 5).

Instead of responding, Plaintiffs filed the instant Complaint on June 16, 2008, seeking (1) a declaratory judgment that Plaintiffs have not infringed the '827 Patent and (2) a declaratory judgment that the '827 Patent is invalid. (Compl., ¶ 33).  Defendant filed the instant motion on August 12, 2008 and the matter was heard on January 10, 2009.

## II.   DISCUSSION

### A.    Motion to Dismiss

#### 1.    Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12 provides, in relevant part, that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)1.

In *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977), the Third Circuit for the United States Court of Appeals divided Rule 12(b)(1) motions into two categories: facial and factual. *Id.* at 891. A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In a factual attack on jurisdiction under 12(b)(1),

4

however, the movant calls into question the essential facts underlying a claim of subject matter jurisdiction. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[,] its very power to hear the case[,] . . . the trial court is free to weight the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen* at 891; *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Under this standard,  no presumptive truthfulness attaches to plaintiff's allegations of jurisdictional facts. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (citing *Mortensen,* 549 F.2d at 891). Therefore, in a 12(b)(1) factual challenge, a court can consult material outside the pleadings, and the burden of proving jurisdiction lies with the plaintiff. *Gould Electronics,* 220 F.3d at 178. "In general, when a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the defendant's challenge as a factual attack on jurisdiction." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574 at 578 (D.N.J. 2002) (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines*, 673 F.2d 700, 711 (3d Cir. 1982)).

### a.      Declaratory Judgment Act

Plaintiffs assert that the Court has subject matter jurisdiction over this case pursuant to the Declaratory Judgment Act , which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (Compl., ¶ 5); 28 U.S.C. § 2201(a). "A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (citations omitted). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Id.* at 1344 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10

(1974)). "[O]nce that burden has been met, absent further information, that jurisdiction continues. The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction." *Id.* at 1344-45 (internal citations omitted). A case or controversy "must be extant at all stages of review, not merely at the time the complaint [was] filed." *Id.* at 1345 (quoting *Steffel*, 415 U.S. at 459 n. 10). In patent cases, the existence of a "case or controversy must be evaluated on a claim-by-claim basis." *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984).

Courts previously used a two-pronged test to determine whether an actual controversy existed in patent declaratory judgment actions.  Under the old test, a plaintiff had to establish that (1) it had actually produced or was prepared to produce an allegedly infringing product and (2) the defendant's conduct created an objectively "reasonable apprehension" that the defendant would initiate suit if the plaintiff continued the allegedly infringing activity**.** *Document Sec. Sys. v. Adler Techs., Inc.*, No. 03-6044, 2008 U.S. Dist. LEXIS 15744, at *34 (W.D.N.Y. Feb. 29, 2008) (citing *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F. 3d 1271, 1283 (Fed. Cir. 2007)**;** *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1334-36 (Fed.Cir.2007)).  However, in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the United States Supreme Court rejected this "reasonable apprehension" test,  noting that it conflicted with the Court's precedent. *Id.* at 132 n. 11.  The Court then held that there is no bright-line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not; instead what is required is

> that the dispute be definite and concrete, touching the legal relations
> of parties having adverse legal interests; and that it be real and substantial
> and admit of specific relief through a decree of a conclusive character,
> as distinguished from an opinion advising what the law would be upon
> a hypothetical state of facts.

*Id*. at 127 (internal citations and quotations omitted).  As such, the Court adopted an "all the circumstances" test, stating that the "the question in each case is whether the facts alleged, under

6

all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*  Although Defendant argues to the contrary, in adopting the "all the circumstances" test, the Court "did not completely do away with the relevance of a reasonable apprehension of suit." Def.'s Mot at 9;  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).  "Rather, following *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Id.* (citing *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008).

With respect to the other prong of the "reasonable apprehension" test, specifically whether defendant has actually produced or was prepared to produce an allegedly infringing product, it "remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate." *Prasco*, 537 F.3d at 1336 n. 4 (internal citation and quotation omitted); *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) ("We conclude that although *MedImmune* articulated a 'more lenient legal standard' for the availability of declaratory judgment relief in patent cases . . .  the issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate. If a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met." (internal citations omitted)).

"[T]he Supreme Court has emphasized that a fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy." *Prasco*, 537 F.3d at 1338-39 (citing *City of L.A. v. Lyons*, 461 U.S. 95 (1983);

*see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement.")  Instead, "it is the reality of the threat of . . . injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* (citing *Lyons*, 461 U.S. at 107 n.8; *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)  As such, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.*; (citing *SanDisk*, 480 F.3d at 1380-81).

The Federal Circuit Court of Appeals has adopted this "all the circumstances" test. *Document Sec. Sys.*, 2008 U.S. Dist. LEXIS 15744, at *36 (citing *Teva Pharms.*, 482 F.3d at 1339 ("we follow *MedImmune*'s teaching to look at 'all the circumstances' . . . to determine whether [plaintiff] has a justiciable Article III controversy"); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior  or abandoning that which he claims a right to do.")  Thus, "[t]he practical effect of *MedImmune* has been to 'lower[ ] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute.'" *Document Sec. Sys.*, 2008 U.S. Dist. LEXIS 15744, at *37  (citing *Frederick Goldman, Inc. v. West*, No. 06-3413, 2007 U.S. Dist. LEXIS 50259, at *3 (S.D.N.Y July 6, 2007)).

### b.   Plaintiffs' Have Asserted Facts Sufficient to Establish Subject Matter Jurisdiction Under The Declaratory Judgment Act

Defendant argues that Plaintiffs have failed to allege facts sufficient to establish there is an Article III case or controversy between Defendant and Plaintiffs sufficient to warrant issuance of a declaratory judgment. As this is a  factual challenge, no presumptive truthfulness attaches to plaintiff's allegations of jurisdictional facts and the burden of proving jurisdiction lies with the plaintiff. *Robinson* 107 F.3d at 1021 (3d Cir. 1997) (citing *Mortensen* at 891).  Despite the high standard placed on Plaintiffs in proving jurisdiction under such a factual challenge, the Court

finds that they have puts forth sufficient evidence that an actual case or controversy existed between the parties.

### i.     Defendant's Arguments that Plaintiffs Are Not the Appropriate Parties to Bring Suit are Unavailing

Defendant argues that there is no actual case or controversy between the parties because Defendant's Letter was addressed to PharmaNet Development Group ("PDG"), and not either of the Plaintiffs, PharmaNet, Inc. and PharmaNet, LLC. (Def.'s Mot. at 7-8).   In response, Plaintiffs argue that Defendant's argument is "trivially hyper-technical" since the Mr. McMullin, to whom the Letter was addressed, has been the president of all three companies. (Pls.' Opp. at 13). Plaintiffs also submit a Certification of the Certificate of Ownership merging one of the named Plaintiffs, PharmaNet, Inc., with and into its parent corporation PDG. *Id.* at 13 n. 8 (citing Certif. of Merger, dated May 29, 2008, attached as Exh. P to Ashbrook Certif.)

In essence, Defendant appears to be arguing that Plaintiffs' Complaint should be dismissed because it was not brought by the real party in interest.  Federal Rule of Civil Procedure 17(a) states "every action shall be prosecuted in the name of a real party in interest." The rule also states "no action shall be dismissed on the ground that it is not prosecuted in the name of a real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Fed. R. Civ. P. 17(a).  The purpose of requiring the real party in interest to prosecute a lawsuit is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id.*, Adv. Cmtee. Notes, 1966.

The facts in this case do not support dismissal under Fed. R. Civ. P. 17(a). As Plaintiff notes, it appears that Plaintiff PharmaNet, Inc., merged with and into its parent PDG. (Certif. of Merger, dated May 29, 2008, attached as Exh. P to Ashbrook Certif.)  It could be argued that, because PharmaNet, Inc. was merged into PDG, the instant suit should have been brought by

9

PDG and not PharmaNet, Inc. Nevertheless, Rule 17(a) does not require dismissal for failure to prosecute in the name of a real party in interest, but instead allows, after objection, for ratification, joinder or substitution of the real party in interest.  Fed. R. Civ. P. 17(a).  As such, Plaintiffs shall, within 30 days of the date herewith, make the appropriate submission to ensure that the complaint is in compliance with Federal Rule of Civil Procedure 17(a).

### ii.    Plaintiffs Have Demonstrated a Reasonable Apprehension of Harm

Plaintiffs argue that Defendant's actions gave Plaintiffs "a reasonable apprehension of being sued, thereby creating a case or controversy."  *Id.* at 6 (citing *Prasco*, 537 F.3d at 1336). In support of this argument, Plaintiffs point to: (1) the Letter sent to Plaintiffs on May 30, 2008 by Defendant; (2)  Defendant's prior lawsuits against five other EDC vendors; and (3) the six news articles regarding Defendant dated from October 2006 through August 2008. (Pls.' Opp. at 6-7).

### (1)    Prior Litigation

Defendant had filed five lawsuits against EDC vendors for infringement of the '827 Patent from 2004 through 2006, with the latest suit having been filed approximately two years prior to Plaintiffs' filing of the Complaint in the instant matter.  (Compl., ¶¶ 12-16). Defendant argues that these suits are an insufficient basis on which to establish subject matter jurisdiction because this litigation did not involve Plaintiffs.  (Def.'s Rep. at 4).  In support, Defendant cites *Geospan Corp. v. Pictometry Internat'l Corp.*, No. 08-816, slip op. at 2 (D. Minn. Aug. 7, 2008) (attached as Exh. 4 to Def.'s Mot.)), an unpublished opinion in which the court held that prior infringement lawsuits regarding the same patent filed by the patentee against third parties was insufficient to cause plaintiff to have a reasonable apprehension of litigation.  *Id.*   However, the Federal Circuit and several other courts have held that a patentee's history of litigation with other parties <u>is</u> an appropriate factor for courts to consider in determining whether subject matter jurisdiction exists under the Declaratory Judgment Act.  *Prasco*, 537 F.3d at 1341 (considering a patentees prior lawsuits brought against third parties and holding that such "prior litigious

conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy."); *see also Indium*, 781 F.2d at 883;  *Panavise Prods., Inc. v. Nat'l Prods., Inc*., 2009 U.S. App. LEXIS 52, at *10-*11; *Crutchfield New Media v. Charles E. Hill & Assocs., Inc.*, No. 06-837, 2007 U.S. Dist. LEXIS 33264 (S.D. Ind. May 4, 2007).

Courts have also held that when a significant amount of time has passed between when the patentee filed its last infringement suit and plaintiff's filing of a declaratory judgment action or when such prior litigation pertained to patents not in suit, such prior litigation is an insufficient basis for subject matter jurisdiction. *See Indium*, 781 F.2d at 880-81, 883 (prior litigation concerning several patents, which were initiated approximately seven years prior to the filing of the declaratory action, is an insufficient basis for subject matter jurisdiction); *Panavise,* 2009 U.S. App. LEXIS 52, at *9-*10 (one year gap between prior lawsuits and declaratory action regarding the patent in suit insufficient under the facts to establish subject matter jurisdiction); *Prasco*, 537 F.3d at 1341 (over one year gap between prior suit on another patent and declaratory action insufficient under the facts).

Here, while there was an approximately two year gap between when Defendant filed its last suit in 2006 and Plaintiff's filing of the instant action on June 16, 2008 (Compl., ¶¶ 12-16),[1] deciding whether subject matter jurisdiction exists is a fact specific inquiry in which a court is required to determine "whether the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, *Inc.*, 549 U.S. at 127 (emphasis added); *see also Sandisk*, 480 F.3d at 1381 ("The outer boundaries of declaratory judgment jurisdiction . . . depend[s] on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case.").  Thus, Defendant's history of

---

[1] Although Defendant also filed two additional lawsuits shortly after Plaintiffs filed of the instant action, "[e]vents that transpired after filing cannot operate to create jurisdiction at the time of filing." Def.'s Mot. at 2 n. 1; Pls.' Opp at 5; *Baker Hughes Oilfield Operations, Inc. v. Reedhycakog, UK, LTD*, No. 05-931, 2008 U.S. Dist. LEXIS 9323, at *8 (D. Utah Feb. 6, 2008).

extensive prior litigation must be viewed in the context of its other actions, and thus viewed

supports a finding that there is an Article III case or controversy between the parties.

**(2)     Public Statements in News Articles**

Plaintiffs assert that the news articles regarding Defendant's actions in defense of the

'827 Patent put Plaintiffs and the rest of the EDC industry on notice of Defendant's prior

lawsuits brought against certain EDC firms, thereby leading the industry to fear "a spate of

additional suits." (Pls.' Opp. at 6-7)*.*  Plaintiffs further argue that through these articles,

Defendant announced its strategy to sue more EDC companies, pointing specifically to Dr.

Kozam's assertion that "[s]everal new patent infringement lawsuits are 'on the horizon.'" (Def.'s

Opp. at 7 (citing Kozam Article, attached as Exh. F to Ashbrook Certif.))

Defendant counters that Dr. Kozam also stated that Defendant planned to identify

infringing companies by "drawing inferences and contacting companies to discuss their [data

collection] methods" and that "[t]here 'may be several' EDC companies that don't infringe on

the patent."  (Def.'s Opp. at 5 (quoting "eTrials Joins Ranks of Datasci [*sic*] EDC Licensees,"

Jan. 22, 2008, attached as Exh. F to Ashbrook Certif.))  Defendant argues that these allegedly

equivocal statements do not rise to a level sufficient to create a case or controversy that warrants

declaratory judgment.  *Id.* (citing *Micron Tech. v. MOSAID Techs., Inc.*, 518 F3d 897, 899 (Fed.

Cir. 2008) (holding that subject matter jurisdiction existed where patentee made public

statements regarding its intent to pursue an aggressive licensing strategy and stated in its annual

report that it believed *all* companies manufacturing a certain type of product were using its

patented technology. (emphasis added); *see also Crutchfield New Media, LLC v. Charles E. Hill

& Assocs., Inc.*, No. 06-837, 2007 U.S. Dist. LEXIS 33264 (S.D. Ind. May 4, 2007), (holding a

case or controversy existed where the defendant made statements indicating a willingness to sue

*any* companies that were engaged in particular activities. (emphasis added)).

Dr. Kozam's statements, considered in light of all the circumstances, contributed to

Plaintiffs' objectively reasonable apprehension that Defendant would file an infringement suit

12

against them. Although Dr. Kozam did not express a belief that *all* EDC companies were infringing on the '827 Patent, his statements must be viewed in the context of the various articles describing the Defendant's aggressive litigation strategy for defending the '827 Patent.  These articles clearly indicate that there was widespread fear in the EDC community regarding whom Defendant would next sue.  *See e.g.* "Datasci [sic] Suits Threaten Industry," October 5, 2006, attached as Exh. B to Ashbrook Certif. ("A key question hanging over the industry is not only which other technology vendors will be sued . . . ."; Kozam Article ("EDC vendors are responding to the actual - or feared - legal pressure being exerted by Datasci [sic], a strategy the company gives no hint of abandoning.") In this context, Dr. Kozam's statements clearly create an objectively reasonable apprehension of suit.   Defendant argues that the articles do not constitute "affirmative acts" on the part of Defendant.  (Def.'s Rep. at 5). However, Defendant has certainly taken other actions, including Dr. Kozam's statements in the Kozam Article, Defendant's prior litigation against other EDC companies and the Letter sent to Plaintiffs, that constitute affirmative acts sufficient to create a n Article III case or controversy between the parties. *Prasco*, 537 F.3d at 1338-39 (citing *SanDisk*, 480 F.3d at 1380-81).  These affirmative acts, viewed against the backdrop of the news articles chronicling Defendant's willingness to enforce the '827 Patent through litigation, are sufficient to create a reasonable apprehension of suit on the part of Plaintiffs.

### (3)      The Letter

Plaintiffs argue that Defendant's letter constituted a threat to sue because it (1) mentioned by name the five companies whom Defendant had previously sued for infringement, included a file history and (2) also required a response from Plaintiffs by a date certain.  (Pls.' Opp. at 7 (citing Letter)). Defendant's counter that the Letter "in no way threatened or suggested that DataSci had any intent or plan to assert any patent infringement allegation" and instead simply requested that Plaintiffs contact Defendant if it had a "business interest in licensing DataSci's patent portfolio."  (Def.'s Mot. at 8-9).  Defendant argues that "to hold otherwise would

13

improperly open all patent holders to expansive threats of declaratory judgment for merely inviting business discussions with other companies. *Id.* at 15 (citations omitted).

In *Baker Hughes*, the Court held that there was no reasonable apprehension of suit where the patentee sent several letters to the plaintiff which notified the plaintiff of its patents and recounted claim language from those patents but took no position on infringement nor explicitly offered a licensing agreement. *Baker Hughes*, 2008 U.S. Dist. LEXIS 9323, at *7-*8.  In *Wooster Brush Company v. Bercom Internat'l, LLC,* No. 06-464, 2008 U.S. Dist. LEXIS 29971 (N.D. Ohio April 11, 2008), the court held that a more strongly worded letter regarding potential infringement did not create an Article III case or controversy. *Id.* at *3, *11 (holding no subject matter jurisdiction where patentee sent a letter stating that the plaintiff's development of a certain product "was 'not without significant risk of violating future patent rights of [patentee],'" requesting the plaintiff  "'not proceed with the marketing, sale, or distribution of [the product]," and concluding that the patentee would "'take whatever steps it deems to be appropriate to protect its intellectual property rights.'")

However, the Court agrees with Plaintiffs and finds that the letter in the instant case is most similar to the one at issue in *Crutchfield New Media, LLC v. Charles E. Hill & Assocs., Inc.*, No. 06-837, 2007 U.S. Dist. LEXIS 33264 (S.D. Ind. May 4, 2007).  (Pls.'s Opp. at 11-12). In *Crutchfield*, the patentee sent a three page letter to plaintiff, which included copies of the patents in suit, their file histories, selective pleadings from prior law suits the patentee had filed, summaries of the licensees and coventees of the patentee under the patents in suit and a summary of the extent to which the patentee had litigated its right to the exclusive use of the technology protected by the patents in suit.  *Crutchfield*, 2007 U.S. Dist. LEXIS 33264, at *2.  The letter also invited the plaintiff to take a license under the patents in suit and requested a response by a date certain. *Id.*

The court reasoned that, through this letter, the patentee placed the plaintiff in the same category as those against whom the patentee had filed suit.  *Id.* at *5.  The Court further held that,

although the patentee did not explicitly allege that the plaintiff was infringing on the patents in suit, the fact that the letter offered the plaintiff a license indicated that the patentee believed that the plaintiff was engaging in allegedly infringing activity. *Id.* Otherwise, the court reasoned, the patentee would not have offered the license in the first place. *Id.* The court then held that the letter's contents, along with its requirement of a response by a date certain and the plaintiff's attorney's knowledge of the patentee's public statements regarding its willingness to litigate against potential infringers, would lead "any reasonable reader [to believe] that a substantial controversy exists between [the] parties . . . [that] is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at *6.

In the instant case, the Letter was sent from Defendant's attorney and explicitly raised only the issue of licensing the '827 Patent. (Letter). Although it did not explicitly reference Defendant's prior litigation, it did mention by name four of the companies against whom Defendant had filed infringement suits. *Id.* The names of these companies were public knowledge, as Defendant's litigation was well publicized by the aforementioned news articles. (*See generally* articles attached as Exhs. B-G to Ashbrook Certif.) Further, the Letter also requested an answer by a date certain. (Letter). Although Defendant argues that the response deadline was given in order to manage responses to the 72 similar letters Defendant also sent during that period, *see* Def.'s Rep. at 1, it is nevertheless objectively reasonable for a reader to perceive that failure to respond by that date would result in the filing of an infringement suit against them. Therefore, the Letter, viewed in the context of Defendants' prior litigation and the news articles about Defendant's aggressive defense of the '827 Patent, is sufficient to establish an Article III case or controversy between the parties.

### iii.    Plaintiffs Have Also Met the Requirements Under the Other Prong of the "All the Circumstances" Test

Under the "all the circumstances" test for determining whether declaratory judgment relief is available in a patent case, a plaintiff must also show that the defendant has actually produced or was prepared to produce an allegedly infringing product. *Prasco*, 537 F.3d at 1336 n.

4 (noting that this requirement "remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate." (internal citation and quotation omitted)).  "If a declaratory judgement plaintiff has not taken significant concrete steps to conduct infringing activity, the dispute is neither "immediate" nor "real" and the requirements for justiciability have not been met."  *Cat Tech, LLC v. Tubemaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) (citing *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990)).

In the Complaint, Plaintiffs allege that "PharmaNet is a leading provider of clinical research services, including electronic data capture services, to companies that conduct clinical trials of drugs." Compl. ¶ 8.  Plaintiffs also aver that "the '827 Patent, which is assigned to DataSci, claims the invention using the internet to do something akin to electronic data capture." *Id.* at ¶ 10.  Defendant argues that such a statement is insufficient to indicate that Plaintiffs' activities are potentially infringing. (Def's Rep. at 6-7).  It asserts that this prong is not met because (1) Defendant has not taken any position on whether Plaintiffs are infringing on the '827 Patent, (2) it did not believe that all EDC companies are infringing, and (3) Plaintiffs allege that they do not infringe in the Complaint. *Id.*

Defendants arguments are unavailing.  For purposes of subject matter jurisdiction under the Declaratory Judgment Act, plaintiff need only demonstrate that it is producing an *allegedly* infringing product, not prove that its product is in fact infringing.  *Prasco* , 537 F.3d at 1336 n. 4 (emphasis added).  That it might ultimately be determined that Plaintiffs' EDC services do not infringe on the '827 Patent does not deny them relief under the Declaratory Judgment Act.  *See id.* (holding that this prong of the "all the circumstances" test was not at issue where plaintiff alleged in the complaint that it was engaged in potentially infringing activities). As such, Plaintiffs have also met this requirement of the "all the circumstances" test.

### 2.    Personal Jurisdiction

Defendant also argues that Plaintiffs' Complaint should be dismissed pursuant to Federal

Rule of Civil Procedure 12(b)(2) because the Court does not have personal jurisdiction over Defendant. Federal Circuit law governs the issue of personal jurisdiction in patent-related cases where the defendant is from out-of-state or where the action is for declaratory judgment and the defendant is a patentee. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found*., 297 F.3d 1343, 1348 (Fed. Cir. 2002) (citing *Hildebrand v. Steck Mfg. Co., Inc*., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citations omitted). When the parties have not conducted discovery, "the plaintiff need . . . 'only to make a prima facie showing' that the defendants were subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus*., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (citing *Deprenyl*, 297 F.3d at 1347; *Graphic Controls Corp. v. Utah Med. Prods., Inc*., 149 F.3d 1382, 1383 n.1, (Fed. Cir. 1998)). "As such, the pleadings and affidavits are to be 'construed . . . in the light most favorable to' the plaintiff." *Silent Drive*, 326 F.3d at 1201 (citation omitted).

In *International Shoe Co. v. Washington*, 326 U.S. 310, (1945), the United States Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 502 (E.D. Pa. 2004) (citing *Internat'l Shoe*, 326 U.S. at 316). "Random," "fortuitous," or "attenuated" contacts do not count in the minimum contacts calculus. *Id*. at 475.

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction and whether the assertion of personal jurisdiction violates federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998) (footnote omitted). New Jersey's long-arm statute permits the exercise of personal jurisdiction over a non-resident defendant to the outer boundaries allowed under due process. N.J. Ct. R. 4:4-4; *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 508 A.2d 1127 (N.J. 1986)). When a state's "long-arm statute is coextensive with the limits of due process," as it is in New Jersey, "the two inquiries

17

collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) ("In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process.") (citation omitted)).

Under Federal Circuit jurisprudence, when deciding whether the exercise of personal jurisdiction over an out-of-state defendant satisfies due process in a patent case, a district court must consider three factors: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is "reasonable and fair." *Silent Drive*, 326 F.3d at 1202 (citing *Inamed*, 249 F.3d at 1360 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). The Federal Circuit explained in *Silent Drive* and *Inamed* that "the first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis.'" *Lawman Armor*, 319 F. Supp. 2d at 502 (citing *Silent Drive*, 326 F.3d at 1202; *Inamed*, 249 F.3d at 1359). "In the first prong, the burden of proof is on the plaintiff to establish 'minimum contacts.' However, in the second prong, the burden of proof is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable." *Lawman Armor*, 319 F. Supp. 2d at 502 (quoting Inamed, 249 F.3d at 1360; Akro, 45 F.3d at 1546) (internal quotations omitted).

Finally, there are two theories under which personal jurisdiction may be exercised: general and specific jurisdiction. "General personal jurisdiction 'requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Multi Tech. Indus., LLC v. Forchheim*, No. 05-5043, 2007 U.S. Dist. LEXIS 9279, at *3 (D.N.H. Feb. 7, 2007) (quoting *Silent Drive*, 326 F.3d. at 1200 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 414-16 (1984)).  In contrast, specific jurisdiction "must be based on activities that 'arise[] out of' or 'relate [] to' the cause of action and can exist even if the defendant's contacts are 'isolated and sporadic.'" *Multi Tech. Indus., LLC,* No. 05-5043, at *6-*7 (quoting *Silent Drive,* 326 F.3d at 1200 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985))(alterations in original)).

### a.     Personal Jurisdiction Exists Over Defendant

The Court finds Plaintiffs have put forth sufficient evidence to demonstrate that the Court has personal jurisdiction over Defendant. As both parties acknowledge, the Federal Circuit has "repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." *Inamed Corp.*, 249 F.3d at 1361 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction."); *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1548 (Fed. Cir 1997) ("We have held that sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process."); *Akro*, 45 F.3d at 1548, ("Warning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."); *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270-71 (Fed. Cir. 1998)).[2]  "[B]eyond the sending of an infringement letter, 'other activities are required in order for a patentee to be subject to personal jurisdiction in the forum.'" *Inamed*, 249 F.3d at 1361 (quoting *Genetic Implant*, 123 F.3d at 1458).  Thus, the Letter, without evidence that Defendant performed "other activities" in the forum state, is an insufficient basis upon which to establish personal jurisdiction.  *Id.*

---

[2]Although the Letter does not explicitly allege infringement on the '827 Patent, the court in  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356 (Fed. Cir. 2006), reasoned, letters containing an "implication of infringement" can be viewed as "cease and desist" letters for jurisdictional purposes despite the fact that the letters did not expressly accuse the recipient of patent infringement. *Id.* at 1367 n. 8..

Plaintiffs argue that both specific and general personal jurisdiction exist over Defendant because, in addition to the Letter, Defendants have performed the following activities: (1) Dr. Kozam's published statements, which Plaintiffs characterize as "public announcements directed to EDC companies in New Jersey and elsewhere regarding DataSci's plans to investigate, seek licenses, and sue;" (2) Defendant's filing of an infringement suit on the '827 Patent against Covance, Inc. ("Covance") a New Jersey company; and (3) Defendant's entering into a licensing agreement for the '827 Patent with Medidata, which Plaintiffs allege is a "company from New Jersey." (Pls.' Opp. at 17).

Plaintiffs arguments with respect to Dr. Kozam's public statements are unavailing. The Court has found no case that supports Plaintiffs' proposition that an article in which a patentee made statements regarding the enforcement of the patent was sufficient to confer personal jurisdiction on the patentee. Further, the article containing Dr. Kozam's comments was available via the internet, and so could be accessed nationwide. (*See* Kozam Article; (Reply Decl. of Marc L. Kozam, M.D., ¶10 ("Kozam Decl.)). The Court also recognizes that nothing in the article, including Dr. Kozam's statements, specifically references New Jersey or any EDC vendors who have connections to that state. *Id*. Thus, even if Dr. Kozam's comments were made on Defendant's own website, they would nevertheless be insufficient to establish personal jurisdiction. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 884-85 (Fed. Cir. 2008) (holding general jurisdiction not established where patentee's website was not directed specifically at customers in the forum state and patentee did not derive significant revenue from the forum state); *GTE New Media Servs. Inc. v. BellSouth Corp*., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (holding that "the ability of . . . [forum state] residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the [forum state]" sufficient to establish specific jurisdiction). As such, Dr. Kozam's statements are insufficient to establish personal jurisdiction over Defendant.

In contrast, Defendant's lawsuit against Covance indicates that Defendant has sufficient

contacts with the forum state to warrant the exercise of personal jurisdiction over it. Defendant filed its infringement suit against Convance two days after Plaintiff's filed the complaint for declaratory judgment in the instant matter. (Pls.' Opp at 5; Def's Rep. at 10; Summons to Covance, Inc. in *DataSci, LLC v. Covance, Inc.*, No. 08-1583 (D. Md. June 16, 2008) attached as Exh. O to Ashbrook Certif. Defendant asserts that this subsequent event does not support an argument for personal jurisdiction. (Def.'s Rep. at 11 (citing *Klinghoffer v. S.N.C. Achille Lauro*,937 F2d 44, 52 (2d Cir. 1991) "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed" (citing 4 C. Wright & A. Miller, Federal Practice and Procedure, § 1051, at 160-62 (1987))).  However, this case is from the Second Circuit United States Court of Appeals and so is not binding on the Court in its review of this matter.  Further,  the Court has found no case to support a similar proposition under Federal Circuit law.  Additionally, as Plaintiffs note, although Defendant did not file its lawsuit against Covance until two days after Plaintiffs filed the Complaint, it is likely that Defendant took steps to investigate and compile its case against Covance prior to the suit's filing in order to comply with it obligations under Federal Rule of Civil Procedure 11(b).[3] As such, Defendant's preparation and filing of the lawsuit against Covance constitutes "purposefully directed" activities at residents of the forum state. *Silent Drive*, 326 F.3d at 1202 (citing *Inamed*, 249 F.3d at 1360 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995).

---

[3]Fed. R. Civ. R. 11(b) provides:
   By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
      (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
      (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
       (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
      (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Plaintiffs also argue that personal jurisdiction over Defendant exists in light of its licensing agreement for the '827 Patent with Medidata, whose principal place of business, according to Plaintiffs, is located in New Jersey.  (Pls.' Opp. at 17 (citing printout of Medidata Solutions Worldwide website, attached as Exh. M to Ashbrook Certif.))  Defendant counters that in June 2007, it entered into a licensing agreement with Medidata Solutions (the "Medidata Agreement"), "a **Delaware** corporation with its principal place of business headquartered in **New York**."  (Def.'s Rep. at 10 (citing Kozam Rep. Decl.,¶ 6 ("Kozam Rep. Decl.") (Docket No. 12-1); LexisNexis and Yahoo News website printouts regarding Medidata Solutions, attached as Exhs. 5 and 6 to Kozam Reply Decl. (emphasis in original)).

In determining whether a licensing agreement coupled with an letter implying infringement is sufficient to establish personal jurisdiction over an over an out of state defendant, "the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there." *Breckenridge Pharm*, 444 F.3d at 1366.  Here, the record indicates that Defendant has entered into a licensing agreement with Medidata and that Medidata has a major office in New Jersey, whether it be its principal place of business or otherwise. (Pls.' Opp. at 17 (citing printout of Medidata Solutions Worldwide website, attached as Exh. M to Ashbrook Certif.))  Therefore, it is reasonable to conclude that Medidata has a presence in the forum state and conducts business there.  Where an out-of-state defendant has sent an infringement letter into a forum state and the letter is accompanied by the grant of a license to an in-state company doing business in the state, personal jurisdiction exists over the defendant. *Akro*, 45 F.3d at 1548-49.  As such, the Medidata Agreement provides also provides a sufficient basis for the Court to exercise personal jurisdiction over the Defendant.

In light of the foregoing, the Court finds that Plaintiffs have alleged facts sufficient to warrant the excercise of personal jurisdiction over Defendant.  However,  the Court notes that its finding that personal jurisdiction exists over Defendant is premised on the allegations as set forth

in the pleadings and the present state of the record.  Should discovery reveal further information with respect to jurisdiction, the Court may revisit the issue. *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. 96-1041, 1996 U.S. Dist. LEXIS 22110, at *7 (D.N.J. June 21, 1996) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)).

**B.     MOTION TO TRANSFER**

In the alternative, Defendant argues that the Court should transfer the matter to the District of Maryland, where two subsequently filed infringement suits regarding the '827 Patent are currently pending. Because the Court finds that it has personal jurisdiction over Defendant, Title 28, United States Code, Section 1404(a), governs the issue and provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In determining whether the matter should be transferred pursuant to 28 U.S.C. § 1404(a), the Court must apply regional circuit law. *See Deprenyl,* 297 F.3d at 1349 (holding that in patent cases, Federal Circuit  law is applied only "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" (quoting *Flex-Foot, Inc. v. CRP, Inc*., 238 F.3d 1362, 1365-66,(Fed. Cir. 2001) (quoting *Amana Refrigeration, Inc. v. Quadlux, Inc*., 172 F.3d 852, 855-56 (Fed. Cir. 1999); *see also Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (applying regional circuit law in reviewing a district court's decision regarding a motion to transfer under 28 U.S.C. § 1404(a)) (citing *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000)).

"The purpose of Section 1404(a) is to avoid the waste of time, energy and money, and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Tischio v. Bontex*, *Inc*., 16 F. Supp. 2d 511, 518 (D.N.J. 1998) (citing *Ricoh Co., Ltd. v. Honeywell, Inc*., 817 F. Supp. 473, 479 (D.N.J. 1993); *Am. Tel. & Tel. Co. v. MCI Communications Corp*., 736 F. Supp. 1294, 1305 (D.N.J. 1990)). "Whether to transfer a case is generally committed to the discretion of the district courts." *In re United States*, 273 F.3d 380,

23

387 (3d Cir. 2001) (citation omitted); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756

(3d Cir. 1973) (under § 1404(a), "the district court is vested with a wide discretion"). However,

when determining whether to transfer a matter, the Court should consider "all relevant factors to

determine whether on balance the litigation would more conveniently proceed and the interests of

justice be better served by transfer to a different forum." *Rappoport v. Steven Spielberg, Inc.*, 16

F. Supp. 2d 481, 498 (D.N.J. 1998) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d

Cir.1995)).  "The burden of establishing the need for transfer still rests with the movant."

*Jumara*, 55 F.3d at 879 (citation omitted).

Although the Third Circuit has not provided a definitive list of factors, in *Jumara v. State

Farm Ins. Co.* it identified several considerations regarding whether transfer is appropriate,

noting that such factors relate to either private or public interests.  *Id.* at 879.   With respect to

private interests, the Third Circuit articulated the following factors: (1) the "plaintiff's forum

preference as manifested in the original choice," (2) the "defendant's preference," (3) "whether

the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative

physical and financial condition," (5) "the convenience of the witnesses--but only to the extent

that the witnesses  may actually be unavailable for trial in one of the fora," and (6) "the location

of books and records (similarly limited to the extent that the files could not be produced in the

alternative forum)." *Id.*(citations omitted).  Factors relating to the public interests include: (1)

"the enforceability of the judgment," (2) "practical considerations that could make the trial easy,

expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting

from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the

public polices of the fora," and (6) "the familiarity of the trial judge with the applicable state law

in diversity cases." *Id.* (citations omitted).

Defendant's main argument in support of transfer is that a District Court Judge, sitting in

the District of Maryland, has previously heard several suits brought by Defendant with respect to

the '827 Patent and currently has two other lawsuits concerning that patent pending before him.

24

(Def.'s Mot. at 31-33).  Defendant argues that this Judge has therefore obtained a "unique knowledge of the relevant facts as well as the applicable law" and so "[t]rying this matter in New Jersey would be a needless waste of time and expense because it would force this Court to acquire knowledge of the matters in controversy which has already been obtained by Judge Garbis in Maryland." *Id.* at 31.  Defendant's further argue that transfer is appropriate because: (1) Defendant's records are in Maryland; (2) Plaintiffs' lead counsel are located in Philadelphia and so it would not be an unfair convenience to try the matter in Maryland; (3) because Plaintiffs are qualified to do business in Maryland and have offices throughout the countries and numerous foreign countries, their records are likely located in places other than New Jersey; and (4) trying the matter in New Jersey would risk inconsistent judicial decisions. (Def.'s Mot. at 32-33; Def.'s Rep. at 14).

The Court finds that transfer is not warranted in the instant case. As Plaintiffs note, Plaintiffs chose the District of New Jersey as its forum because (1) it is where Plaintiffs are headquartered and have their principal operations; (2) it is where most of the fact witnesses are located; (4) it is the location of most of its documentary evidence; and (5) it is also where Plaintiffs received Defendant's Letter and where any potentially infringing activity would have occurred.  (Pls.'s Opp. at 21).  Plaintiffs also notes that both parties' law firms are located in New Jersey and that neither has a Maryland office. *Id.* at 23.  Further, while Defendant argues that it is qualified to do business in Maryland, it does not dispute Plaintiff's allegation that the invention protected by the '827 Patent "was both conceived of and reduced to practice in Alexandria, Virginia." (Def's Rep. at 14; Pls.' Opp. at 21-22).  In light of these considerations, Defendant's arguments with respect to where its records are located, where it speculates Plaintiffs' records may be located and the location of Plaintiffs' attorneys are unavailing.  At most, Defendant's evidence indicates that transferring the matter would be convenient for Defendant and not unduly burdensome to Plaintiffs.  This is not the appropriate inquiry under *Jumara.*

The argument concerning prior and existing suits in the District of Maryland related to

the '827 Patent is equally unavailing.  The fact that a Judge of that Court has presided over cases concerning the '827 Patent in the past does not dictate that all litigation pertaining to this patent must be adjudicated by him.  As Plaintiffs argue, despite the fact that the Judge may have some familiarity with the '827 Patent several years ago, he has no knowledge of Plaintiffs' potentially infringing product. (Pls. at 24).  Further, Defendant filed the two cases that are currently pending in Maryland *after* Plaintiffs filed the instant action. (Pls.' Opp. at 24).  It would simply be unjust to allow Defendant to rely on these later filed cases in order to defeat Plaintiffs' preference that this matter be litigated in New Jersey.  The Court notes that, as Defendant asserts, allowing the instant matter to go forward in this forum leaves open the possibility  that this Court and the District Court of Maryland would render inconsistent judgments.  (Def.'s Mot. at 33).  However, as the parties and therefore the products at issue in these cases differ, there is only a risk of inconsistent judgments with respect to the issue of the '827 Patent's validity.  Further, while courts consider the potential risk for inconsistent judgments when deciding whether transfer is appropriate, this is not the only factor courts must considered when making such a determination. (Def.'s Mot. at 33-34); *Royal Indem. Co. v. Specialty Ins. Agency, Inc.*, No. 99-CV-3689, 2000 U.S. Dist. LEXIS 5715, at *6 (E.D. Pa. Apr. 20, 2000) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (U.S. 1947); *Jumara*, 55 F.3d at 879.  In light of the above mentioned factors, which weigh heavily against transfer, as well as the fact that the risk of inconsistent judgments was created by Defendant's decision to file subsequent lawsuits in the District of Maryland while this action was pending, the Court finds that transfer is inappropriate in the instant matter.


III.    **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss or transfer is denied.


Dated: February 17, 2009

_____s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.